# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **TERRY SWAIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **1:13-CV-585-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Terry Swain ("Swain") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

## I. Procedural History

Swain, whose past relevant experience includes work as concrete finisher, filed an application for Title XVI Supplemental Security Income on August 16, 2010,[1] alleging a disability onset date of August 16, 2010. (R. 21). After the SSA denied Swain's claim, he requested a hearing before an ALJ. (R. 21, 97-99). The ALJ subsequently denied Swain's claim,

---

[1] Initially, Swain alleged his disability began in July of 2004. (R. 172). At the hearing with the ALJ, Swain amended the his alleged onset date to August 16, 2010 (R. 21).

(R.21-32), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1). Swain then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

2

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Swain had not engaged in substantial gainful activity since August 16, 2010, and, therefore, met Step One. (R. 23). Next, the ALJ found that Swain satisfied Step Two because he suffered from the severe impairments of "back strain with unremarkable MRI of the lumbar spine; wrist numbness secondary to possible carpal tunnel syndrome, but no nerve impingement reported on MRI; uncontrolled hypertension; and generalized anxiety disorder." (*Id.*). The ALJ then proceeded to the next step and found that Swain failed to satisfy Step Three because "he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. 24). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Swain has the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. § 416.967(b) except the claimant can stand and/or walk for no more than a total of four hours in an eight-hour workday; he is able to understand, remember, and carry out short simple instructions, but not complex or detailed instructions; he is capable of attending to tasks for a two hour period at a time; he is capable of casual interaction with the public, coworkers, and supervisors; and he is able to handle gradual and infrequent changes in the workplace.

(R. 27). In light of his RFC, the ALJ held that Swain "is unable to perform any past relevant work." (R. 31). Lastly, in Step Five, the ALJ considered Swain's age, education, work experience,[2] and RFC, and determined "there are jobs that exist in significant numbers in the national economy [Swain] can perform." (Id.). Therefore, the ALJ found that Swain "has not

---

[2] As of the date of the ALJ's decision, Swain was 46 years old, had a high school education, and past relevant heavy skilled work as a concrete finisher. (R. 31).

4

been under a disability, as defined in the Social Security Act, since August 16, 2010, the date that the application was filed." (R.32).

### V. Analysis

The court now turns to Swain's contentions that the ALJ failed to (1) identify all of his "severe" impairments; (2) include all of his emotional and cognitive limitations in the RFC assessment; and (3) properly consider whether Swain met listing 12.05C. Doc. 9 at 3. The court addresses each contention in turn.

####    A.   Additional Severe Emotional or Cognitive Impairments

Swain first contends that the ALJ erred by failing to find that he has additional severe mental or cognitive impairments. Specifically, Swain contends that the ALJ should have found that his diagnosis of psychotic disorder, made during an intake evaluation at Cheaha Mental Health Center, and Dr. Robert A. Storjohann's diagnoses of post-traumatic stress disorder (PTSD) and major depressive disorder were severe disorders. Doc. 9 at 5-7. Swain's contention is unavailing because the ALJ found in Swain's favor at Step Two, and in this circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as the ALJ considered the claimant's impairments, whether severe or not, in combination at the later steps. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Moreover, the regulations state that the only consequence of the analysis at Step Two is that if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. *See* C.F.R. § 404.920(c)a)(ii). Here, after careful consideration of the record, the ALJ found that Swain had multiple severe impairments: "back strain with unremarkable MRI of the lumbar spine; wrist numbness secondary to possible carpal tunnel syndrome, but no nerve

impingement reported on MRI; uncontrolled hypertension; and generalized anxiety disorder." (R. 23). Because an ALJ is not required to identify all of the claimant's severe impairments, at Step Two, the court finds that the ALJ committed no error at Step Two. *See Heatly*, 382 F. App'x at 825. Accordingly, even assuming that Swain is correct, the ALJ's failure to identify all of his severe impairments is harmless because it did not, in any way, change the ALJ's decision. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

  B. <u>ALJ Properly Considered the Medical Evidence in Making RFC Decision</u>

  Swain next contends that the ALJ failed to consider his additional emotional and cognitive impairments when assessing his RFC. Doc. 9 at 3. Swain specifically alleges that the ALJ did not properly consider his alleged additional "severe" impairments of psychotic disorder, PTSD, and depression recorded by "psychological sources that have actually seen [him]," Doc. 9 at 3, in his overall RFC assessment. Doc. 9 at 8. According to Swain, the ALJ's failure to identify these additional severe impairments caused his RFC assessment to be flawed, which, in turn, caused a flaw in the ALJ's determination that a significant number of jobs in the national economy exist that Swain can preform. Doc. 9 at 3.

  Although the ALJ was not required to identify all of the claimant's severe impairments at Step 2, the ALJ is required to demonstrate that he has considered all of the claimant's impairments, whether they are severe or not, at the later steps of the sequential analysis. *Heatly*, 382 F. App'x at 825. "[R]esidual function capacity is an assessment, based on all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ recognized his duty to "consider all of

the claimant's impairments, including impairments that are not severe" in assessing Swain's RFC. (R. 22).  Moreover, the ALJ specifically stated that he considered "all symptoms and the extent to which these symptoms that can reasonably be accepted as consistent with the objective medical evidence." (R. 27).  This finding alone was sufficient to show that the ALJ considered all of Swain's impairments, including his impairments that were not severe, in assessing his RFC.  *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991) (ALJ's consideration of the claimant's combined impairments at later steps in the sequential evaluation process is sufficient to show the impairments were considered in combination).

   Significantly, the ALJ extensively discussed  Swain's mental healthcare treatment, including records from Cheaha Mental Health Center and Dr. Storjohann's consultative evaluation, which are the two diagnosing sources of Swain's purported additional severe impairments.  (R. 23-24; 29). As it relate to Dr. Storjohann, as a  nontreating physician, Dr. Storjohann's opinion was not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2).  Consequently, the ALJ had to consider several factors to determine the weight, if any, to give Dr. Storjohann's opinions, including whether Dr. Storjohann presented medical evidence and explanation supporting his opinion, and whether his opinion is consistent with the record as a whole.  *See* 20 C.F.R. § 416.927(c).  In the end, the ALJ gave little weight to Dr. Storjohann's opinions and set forth specific reasons for doing so.  (R. 24, 29).  First, the ALJ properly considered that "Dr. Storjohann's evaluation [was] based on a single visit," (R.30), and  that Dr. Storjohann "did not have all of [Swain's] medical records and [Dr. Storjohann] relied on the claimant as his sole informant." (R. 30).  These findings are proper because "[g]enerally, [the ALJ] give[s] more weight to opinions from treating sources," 20 C.F.R.§§ 404.1527,

416.927(c)(2), and an ALJ may reject a physician's opinion when it "appears to be based primarily on [a claimant's] subjective complaints," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Next, the ALJ properly agreed with the conclusion of state agency psychologist, Dr. Larry H. Dennis, that Dr. Storjohann's diagnosis of a major depressive disorder and PTSD "is not consistent with [Swain's] medical records" and gave Dr. Storjohann's opinion "little weight." (R. 23-24). This finding is proper because the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). Significantly, the ALJ found that "there [was] no reference to a diagnosis for treatment of depression in [Swain's] medical records, including his brief period of treatment at Cheaha Mental Health Center," (R. 24), and that the severe symptoms upon which Dr. Storjohann's opinions were based were not "reported or observed by [Swain's] treating physicians." (R. 24-25). As a result, the ALJ gave significant weight to the opinion of Dr. Dennis, finding his "assessment to be a more realistic" and "consistent with the medical record as a whole." (R. 30). Therefore, the court finds that the ALJ had good cause to reject Dr. Storjohann's opinions and that substantial evidence supports the ALJ's decision.

Similarly, the ALJ properly considered therapist Ginny Archer's diagnosis of psychotic disorder from an intake evaluation at Cheaha Mental Health Center and provided sufficient reasons for rejecting that diagnosis. Because therapist Archer is not an acceptable medical source, s*ee* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources), her opinions are not medical source opinions.[3] 20 C.F.R. § 404.1527(a)(2). Moreover, because medically

---

[3] Nonetheless, evidence from sources such as Ms. Archer may be used to show the severity of a claimant's impairment, 20 C.F.R. § 404.1513(d), and the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of

determinable impairments must be established by evidence from acceptable medical sources, 20 C.F.R. § 404.1513(a), therapist Archer's diagnosis does not establish Swain's purported psychotic disorder as a medically determinable impairment. Critically, the ALJ properly considered Ms. Archer's diagnosis and rejected it because it was "based entirely on the claimant's self-reported symptoms," and because Swain failed to follow his treatment plan at Cheaha Mental Health Center. (R. 29). The ALJ committed no error because an ALJ can reject a medical opinion when it "appears to be based primarily on [a claimant's] subjective complaints," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004), and an ALJ may reject a medical opinion when medical records show infrequent medical visits. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 290 (11th Cir. 2009). As the ALJ noted, Swain failed to show up for therapy appointments on December 15, 2009, January 14, 2010, February 27, 2010, and March 1, 2010, and that Cheaha Mental Health Center closed Swain's case after he failed to show up for a June 7, 2010 group therapy appointment. (R. 29).

Put simply, contrary to Swain's contentions, the ALJ's RFC assessment was based on all of the relevant evidence, which included both severe and non-severe impairments. Moreover, the ALJ properly rejected Dr. Storjohann's diagnoses of depression and PTSD and therapist Archer's diagnosis of psychotic disorder. As a result, the court finds that the ALJ applied correct legal standards in making his RFC assessment, and that the record contains substantial evidence to support the ALJ's decision.

C.  Listing 12.05C

Finally, Swain contends that the ALJ failed to properly consider whether he met listing

---

the case." *See* SSR 06-03p at * 6.

12.05C, which provides the requirements for a disability based on mental retardation. According to Swain, the ALJ erred by finding that Swain "did not function at a sub-average intellectual level in his work or daily life."[4] (R. 26).  To qualify as a disability under listing 12.05C, Swain's condition must first "satisf[y] the diagnostic description in the introductory paragraph . . . ." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00A (hereinafter "listing(s)").  The introductory paragraph of listing 12.05C requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  Listing 12.05. After satisfying the diagnostic criteria, Swain must demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Listing 12.05.

To support his contention that he satisfies the introductory paragraph of listing 12.05C, Swain asserts that, "[a]lthough records from [the] Talladega County School System do not contain psychometric testing, they do contain information that would lead the court to believe that [Swain] was in special education," and that a record from Cheaha Mental Health Center "suggests that the therapist at the mental health center believed that Mr. Swain was possibly mentally retarded."  Doc. 9 at 13.  To show that his IQ meets the listing, Swain relies on IQ testing administered by Dr. Storjohann, Doc. 9 at 14, who reported that Swain achieved a Verbal Comprehension Index score of 58; a Perceptual Reasoning Index of 67; and a Working Memory Index of 53. (R. 319). However, Dr. Storjohann did not assess a full scale IQ because Swain "was unable to see the stimulus items for the Symbol Search and Coding subtests well enough to

---

[4] Although the ALJ found that "[t]he severity of [Swain's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, and 12.06," (R. 24), Swain only challenges the ALJ's application of § 12.05C. Doc. 9 at 13.

complete those two subtests." (R. 319).

After reviewing the record, the court concludes that substantial evidence supports the ALJ's finding that, despite Swain's low scores on the WAIS-IV administered by Dr. Storjohann, he did not meet the criteria of listing 12.05C.  In this circuit IQ scores alone are not determinative of whether a claimant meets listing 12.05C.  *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)(commissioner is not required "to make a finding of mental retardation based on the results of an IQ test alone").  Rather, an ALJ properly examines IQ test results "in conjunction with other medical evidence and the claimant's daily activities and behavior" to determine whether a claimant is mentally retarded.  *Id.* at 1500.  Here, although Swain received scores below 70 on the WAIS-IV, the ALJ thoroughly discussed the medical evidence, and properly considered Swain's behavior, daily activities, and his subsequent work history in finding that Swain did not meet the diagnostic criteria for mental retardation.  As a result, the court finds that substantial evidence supports the ALJ's decision to give "little weight" to Swain's IQ scores and his determination that Swain did not meet listing 12.05C.  As the ALJ explained, there was no "evidence of prior intellectual testing during [Swain's] developmental period" and,  that, although Swain's academic records indicate low academic achievement, a number of conditions, "including a learning disorder, reading disorder, dyslexia, etc., can account for low academic achievement in addition to mental retardation."  (R. 26).  To illustrate this point, the ALJ emphasized that Swain's "high school grades, other than his last semester, were in the average range," that Swain's ninth grade *Wide Range Achievement Test* score "indicated that Swain was reading and spelling at the fifth and sixth grade level," and that Swain's school records indicate that he graduated and failed to document the nature of his learning problem.  (R. 26).  Next, the

ALJ focused on Swain's daily activities and work history and properly noted that Swain lived independently for many years after his developmental period, (R. 26), and properly considered Swain's "past relevant work as a concrete finisher," which the vocational expert classified as "skilled work with an SVP of seven." (*Id*.). As a result, the ALJ found that "Swain's subsequent work history and substantial earnings in a skilled job . . . supports a conclusion that he did not function at a subaverage intellectual level." (*Id*.).

Based on the court's review of the record, the substantial evidence, including Swain's daily activities and work history, supports the ALJ's decision to discredit his WAIS-IV scores. *See Popp,* 779 F.2d 1500 ( ALJ examines IQ test results "in conjunction with other medical evidence and the claimant's daily activities and behavior"). Therefore, contrary to Swain's contention that the ALJ did not properly consider whether Swain met listing 12.05C, the court finds that the ALJ applied the correct legal standards in finding that Swain did not meet listing 12.05C.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Swain is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** this 29th Day of September, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE